UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **24-20545-CR-SCOLA/LETT**

18 U.S.C. § 371
18 U.S.C. § 982

UNITED STATES OF AMERICA,

vs.

CHRISTOPHER ROBERTSON,

Defendant.
_____/

FILED BY __mdc__ D.C.

Dec 16, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami, FL

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times material to this Information:

#### Importing Goods into the United States

1. The U.S. Customs and Border Protection ("CBP"), an agency of the U.S. Department of Homeland Security, was responsible for examining goods entering the United States to ensure they were admissible under, and in compliance with, federal laws and regulations. CBP was also responsible for assessing and collecting import duties, taxes, and fees on those goods.

2. In order to facilitate the entry of goods into the United States, a customs broker, acting as an authorized representative of the importer, filed entry documents with CBP.

3. CBP Entry Forms 7501 ("Entry Summary") and 3461 ("Entry/Immediate Delivery") required an importer to provide specific and truthful information pertaining to imported goods, including a description of the goods, as well as their manufacturer, value, and country of origin.

1

4.       The information entered on CBP Entry Forms 7501 and 3461 enabled CBP to properly assess import duties, collect accurate statistics, and determine whether other applicable legal requirements were met. For example, from the declared value of the goods, CBP determined how much duty to collect; and from the declared country of origin of the goods, CBP determined whether the goods were exempt under free-trade agreements or were subject to special import duties.

### U.S. Trade Laws Regarding Importation of Goods into the United States

5.       Pursuant to Title VII of the Tariff Act of 1930, as amended, the U.S. Department of Commerce ("Commerce") and the U.S. International Trade Commission had the authority to impose duties on certain foreign imports, such as anti-dumping duties and countervailing duties, in order to mitigate the adverse impact of various trade practices on domestic industries and workers.

6.       Commerce had authority to impose anti-dumping duties to provide relief to domestic industries that have been, or were threatened with, material injury caused by imported goods sold in the United States market at prices that were shown to be less than fair market value (i.e., dumping).

7.       Commerce also had authority to impose countervailing duties to give a similar kind of relief to domestic industries that have been, or were threatened with, material injury caused by imported goods that received significant foreign government subsidies and could therefore be sold at lower prices than similar goods produced in the United States.

8.       Section 301 of the Trade Act of 1974 ("Section 301"), as amended, authorized the Office of the U.S. Trade Representative to impose import duties in response to unfair trade practices by foreign countries. Such unfair trade practices included violations of U.S. trade

agreements, as well as unreasonable or discriminatory practices that burdened or restricted U.S. commerce.

### Duties Imposed on Truck Tires from China

9. Tractor-trailer truck tires (hereinafter referred to as "truck tires") carried a general duty rate of 4% of their total declared value regardless of the country of origin, with the exception of countries that received duty-free access to U.S. markets.

10. On or about September 24, 2018, truck tires originating in or imported from China, became subject to a Section 301 duty rate of 10%. Beginning on or about May 10, 2019, and continuing through the date of this Information, that rate increased to 25%.

11. From on or about February 15, 2019, through the date of this Information, Commerce-issued anti-dumping and countervailing duty orders were in effect in the United States that imposed a combined duty rate of 44.99% on all truck tires originating in or imported from China.

12. As a result, starting on or about May 10, 2019, through the date of this Information, the combined duties on truck tires originating in or imported from China, were 73.99%.

### The Defendant, Related Entities and Individuals

13. Ace Tyres International Limited ("Ace Tyres"), was a Hong Kong corporation incorporated on or about December 28, 2021. Ace Asia International Wheel Co. Limited ("Ace Asia") was a Hong Kong corporation incorporated in 2017 and dissolved on or about August 13, 2021. Both Ace Tyres and Ace Asia operated as brokers of truck tires.

14. Defendant **CHRISTOPHER ROBERTSON**, a citizen and resident of the United Kingdom, was the managing director of Ace Tyres, and an operator of Ace Asia.

3

15. Production Tire Company ("Production Tire") was a Florida corporation located at 3565 NW 74th Avenue, Miami, Florida, doing business as a retailer of truck tires.

16. Premier Trade Corporation ("Premier Trade") was a Florida corporation with a principal address of 3565 NW 74th Avenue, Miami, Florida.

17. Co-conspirator Hector Samuel Esquijerosa, a resident of Miami-Dade County, Florida, was the registered agent, president and sole corporate officer of Production Tire and Premier Trade.

18. Company 1 was a Massachusetts corporation with a principal address in Mansfield, Massachusetts. Individual 1, a resident of Massachusetts, was the owner of Company 1.

**CONSPIRACY TO COMMIT AN OFFENSE AGAINST THE UNITED STATES
(18 U.S.C. § 371)**

19. Beginning in or around February 2021, and continuing through in or around January 2023, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**CHRISTOPHER ROBERTSON,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly, combine, conspire, confederate, and agree with Hector Samuel Esquijerosa, and with others, known and unknown to the United States Attorney, to commit an offense against the United States, that is, to knowingly and willfully, and with intent to defraud the United States, smuggle, and clandestinely introduce, into the United States any merchandise, that is, truck tires, which should have been invoiced, and make out and pass, through the customhouse, a false and fraudulent invoice, and other document and paper, including CBP entry forms and invoices, in violation of Title 18, United States Code, Section 545.

## PURPOSE OF THE CONSPIRACY

20. It was the purpose of the conspiracy for **CHRISTOPHER ROBERTSON** and his co-conspirators to unlawfully enrich themselves by importing truck tires manufactured in China without paying the required duties on such imports and then selling the illegally imported truck tires for financial gain.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **CHRISTOPHER ROBERTSON** and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

21. **CHRISTOPHER ROBERTSON**, Hector Samuel Esquijerosa, and their co-conspirators, arranged and negotiated the purchase of container loads of Chinese-origin truck tires that were illegally imported into the United States, and then sold the truck tires to buyers in the Southern District of Florida and elsewhere.

22. In order to avoid the assessment of applicable duties imposed on truck tires from China, **CHRISTOPHER ROBERTSON**, together with his co-conspirators, caused truck tires from China to be transshipped through Malaysia before coming to the United States.

23. **CHRISTOPHER ROBERTSON**, together with his co-conspirators, caused original markings on the sidewalls of the truck tires to be removed and replaced with other markings, in order to conceal from CBP that the truck tires originated in China.

24. **CHRISTOPHER ROBERTSON**, Hector Samuel Esquijerosa, and their co-conspirators, filed or caused to be filed with CBP, documents that falsely and fraudulently represented that the Chinese truck tires originated in Malaysia instead of China.

25. In some instances, **CHRISTOPHER ROBERTSON**, together with his co-conspirators, caused the creation of two sets of invoices—one set of invoices that reflected the actual value of the truck tires and the price paid for the truck tires, and a second set of invoices presented to CBP for calculation of the corresponding duty that falsely and fraudulently undervalued the truck tires.

26. **CHRISTOPHER ROBERTSON**, Hector Samuel Esquijerosa, and their co-conspirators communicated using encrypted instant messaging apps, such as WhatsApp and WeChat, to discuss, plan, coordinate, and conduct acts in furtherance of the conspiracy.

27. **CHRISTOPHER ROBERTSON**, Hector Samuel Esquijerosa and their co-conspirators fraudulently evaded the payment of duties to CBP on truck tires that were imported from China, resulting in a loss of revenue to the United States in the approximate amount of $233,261.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the object and purpose thereof, **CHRISTOPHER ROBERTSON**, Hector Samuel Esquijerosa, and their co-conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

1. On or about February 4, 2021, Hector Samuel Esquijerosa created Premier Trade as a Florida corporation.

2. On or about February 17, 2021, **CHRISTOPHER ROBERTSON** exchanged WhatsApp messages with Hector Samuel Esquijerosa and explained how he could help Esquijerosa avoid anti-dumping duties, because he took the over runs in the production of Chinese tires, rebranded them, and reshipped them through Malaysia or Thailand.

6

*August 2021 Import*

3. On or about July 18, 2021, **CHRISTOPHER ROBERTSON** exchanged a series of WhatsApp messages with Hector Samuel Esquijerosa and presented to Esquijerosa an invoice that reflected a shipper billing Premier Trade for 547 truck tires to be imported through Savannah, Georgia. During the exchange, Esquijerosa textted, "I don't need any red flags. Make it look nice and let's not get greedy."

4. On or about August 16, 2021, **CHRISTOPHER ROBERTSON,** Hector Samuel Esquijerosa, and their co-conspirators, caused Premier Trade's customs broker to submit an Entry/Immediate Delivery form with an invoice from the same shipper, and to declare to CBP that the country-of-origin designation for the 547 truck tires listed on Entry No. CEY-10218442 was Malaysia and that their total value was $69,940.

5. On or about November 2, 2021, **CHRISTOPHER ROBERTSON** exchanged WhatsApp messages with Hector Samuel Esquijerosa and agreed to provide Esquijerosa a letter from the purported Malaysian manufacturer of the 547 truck tires that CBP had seized. **ROBERTSON** texted that he "will get the letter made up and make it from a fake account."

*November 2022 Import*

6. On or about August 25, 2021, **CHRISTOPHER ROBERTSON** introduced Individual 1 to Hector Samuel Esquijerosa as someone who was having some issues importing tires.

7. On or about October 21, 2021, **CHRISTOPHER ROBERTSON** sent Hector Samuel Esquijerosa a WhatsApp message with photographs of "my ARMFORCE branded" tires, with markings on the side of the tires indicating "Made in China" and the U.S. Department

of Transportation ("DOT") number 047, corresponding to a Chinese manufacturing plant in Qingdao, in the Shandong Province of China.

8. On or about November 29, 2022, **CHRISTOPHER ROBERTSON,** Hector Samuel Esquijerosa, and their co-conspirators, using Company 1 as the importer, caused to arrive at the Port of Miami a shipment of 605 truck tires assigned Entry No. NF7-22224641.

9. On or about November 29, 2022, **CHRISTOPHER ROBERTSON,** Hector Samuel Esquijerosa, and their co-conspirators caused Company 1's customs broker to submit an Entry/Immediate Delivery form, and to declare to CBP that the country-of-origin designation for the 605 truck tires listed on Entry No. NF7-22224641 was Malaysia.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

1. The allegations contained in this Information are hereby re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **CHRISTOPHER ROBERTSON,** has an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 371, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as a result of such violation, pursuant to Title 18, United States Code, Section 982(a)(2)(B).

3. The property subject to forfeiture as a result of the alleged offense includes, but is not limited to, a sum which represents the total amount of funds involved in or derived from the alleged offenses and may be sought as a forfeiture money judgment.

4. If the property subject to forfeiture, as a result of any act or omission of the defendants,

    a) cannot be located upon the exercise of due diligence;

    b) has been transferred or sold to, or deposited with, a third party;

    c) has been placed beyond the jurisdiction of the court;

    d) has been substantially diminished in value; or

    e) has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 982(a)(2)(B) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

AIMEE C. JIMENEZ
ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

CHRISTOPHER ROBERTSON,

_____/
Defendant.

CASE NO.: _____

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
☒ Miami   ☐ Key West   ☐ FTP
☐ FTL     ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __0__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)            (Check only one)
   I   ☒ 0 to 5 days           ☐ Petty
   II  ☐ 6 to 10 days          ☐ Minor
   III ☐ 11 to 20 days         ☐ Misdemeanor
   IV  ☐ 21 to 60 days         ☒ Felony
   V   ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) Yes
   If yes, Magistrate Case No. 24-mj-04329-Sanchez
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Altonaga  Case No. 24-20436-CR-ALTONAGA/REID
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
16. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

By: _____
Aimee C. Jimenez
Assistant United States Attorney
Court ID No.   A55000795

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** CHRISTOPHER ROBERTSON

**Case No:** _____

Count #: 1

Conspiracy to Commit an Offense Against the United States

Title 18, United States Code, Section 371

* **Max. Term of Imprisonment:** 5 years
* **Mandatory Min. Term of Imprisonment (if applicable):** N/A
* **Max. Supervised Release:** 3 years
* **Max. Fine:** $250,000

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>**CHRISTOPHER ROBERTSON,**<br><br>_____<br>*Defendant* | )<br>)  Case No.<br>)<br>)<br>) |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: 12/4/2024

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Marissel Descalzo
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*